295 P.2d 337

**The STATE of Utah, Plaintiff and Respondent,**

**v.**

**William France GILLEN, Defendant and Appellant.**

**No. 8392.**

Supreme Court of Utah.
March 26, 1956.

Wm. G. Fowler, Scott M. Matheson, Jr., Sumner J. Hatch, Brant H. Wall, Salt Lake City, for appellant.

E. R. Callister, Atty. Gen., Maurice D. Jones, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a conviction for uttering a forged instrument. Affirmed.

Counsel for defendant urges that the trial court erred in sustaining an objection by the District Attorney to defense counsel's proposal that the court reporter's notes, prepared at the time an alleged accomplice was being examined for probation after he confessed a forgery out of which the uttering allegedly flowed, be read in evidence.

The alleged accomplice, on being cross-examined in the instant case, said he had had a conversation with the trial judge (who was he who tried the present case), but denied that the judge had told the witness that he was "expected to cooperate with the state in this matter." After this quoted reply to a question put the witness, defense counsel pursued the matter no further, until later on, when in chambers, he made the proposal to read the reporter's notes into the record to contradict the witness' denial that he was so admonished, thus to impeach the statement and show bias and prejudice on the part of the witness. At the time of the proposal, the colloquy between court and counsel makes it appear that defendant's counsel wanted that portion of the notes read which had to do with (1) any admonition given by the court to the accomplice at the time he was placed on probation, (2) the part of the admonition "in which the court discussed the checks," (3) any "accomplice thereto," (4) "defendant's knowledge or lack of knowledge as to who wrote those checks," (5) the court's indication "that this was one of the bases upon which the probation was

being considered," (6) the part where "the court expressed an opinion that he thought the defendant was harboring somebody," and the part where the witness, having denied having a conversation with the court, "attempted evasion of that conversation by reference to various dates."

At this point the court indicated that he would not permit the reading of the notes because it would disclose, by way of hearsay, the expression of opinion by the court on a previous occasion, and would tend to prejudice the jury. The "prejudice" mentioned by the judge obviously was a prejudice he believed would militate against the defendant,—which the court was attempting to obviate.

There seems to be nothing in the proposal to read from the reporter's notes that would represent anything other than a routine admonition to a prospective probationer. However, without mincing words, any other interpretation would call for an implication that the trial court, by threat, veiled or otherwise, was attempting to induce the accomplice to color his testimony so as unfairly to convict the defendant here. We cannot see where the proposed excerpts from the notes could raise any such implication. We will not dignify any suggestion that the trial court indulged such practice, by discussing it further, our studied opinion and conclusion being that the record here discloses no abuse of discretion on the part of the trial court or prejudice to the defendant, but that, on the contrary, it reflects an extended effort by the court to safeguard the rights of the accused,—which apparently resulted in something akin to a failure in respecting the proverbial good advice that one should not bite the hand that feeds him.

McDONOUGH, C. J., and WADE and WORTHEN, JJ., concur.

CROCKETT, Justice (concurring).

I concur in affirming the judgment. However, I am not in accord with any implication that courts or judges are sacrosanct or that the proceedings in question would not have been available for the use of the defendant to impeach the witness, Samuelson, under proper circumstances. If the latter had on any prior occasion made statements on a material issue in conflict with his present testimony, it could have been used for impeachment.

The court stated to the defense counsel: "And you were particularly offering that portion wherein the court expressed an opinion that he thought this defendant was harboring somebody." Mr. Hatch: "That is correct, and I further wish to have this portion read with respect to the credibility of the witness in his denying a conversation with the court. * * *"

The trial judge correctly indicated that any statement he had made would have been hearsay. He had no direct knowledge of the facts and whatever he said would have added no substance to the evidence

in the instant case. It was further particularly appropriate for the trial judge to exclude the evidence because of his apprehension that it might contain statements made by him relating to the guilt of the defendant herein which would have redounded to his prejudice before the jury.

There was no separate proffer of proof concerning the matter purporting to impeach the witness, Samuelson. In fact, counsel did not appear to know just what had been said and was on somewhat of a fishing expedition concerning the former colloquy between the court and Samuelson. It is open to serious doubt that any statement by the trial judge to Samuelson that he "expected him to cooperate with the State" is of any material significance, whether it was made or not. It could have been material only on the question as to whether any promise, threat or inducement was made or offered him which would have tended to persuade him to tell an untruth or color his testimony against Gillen to protect himself. Even if such a statement was made, it was not improper or untoward in any way because it indicated nothing other than that the witness would be expected to tell the truth about the matter.

No proper foundation having been laid and no proper offer having been made as a basis upon which to impeach the witness, the trial court did not abuse its discretion in not complying with the defendant's request that the reporter be required to read the colloquy between the court and the witness on a prior occasion as part of the evidence in this trial. I, therefore, agree that there was no error prejudicial to the rights of the defendant which would warrant a reversal of the conviction. We are under mandate to disregard error unless it is substantial and prejudicial.[1]

1. Section 77–42–1, U.C.A.1953; State v. Woods, 62 Utah 397, 220 P. 215.